**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                            :
                                                        :
                    Plaintiff,                          :    Civil Action No. 22-cv-8555
                                                        :
v.                                                      :    **COMPLAINT FOR VIOLATIONS OF**
                                                        :    **SECTIONS 14(a) AND 20(a) OF THE**
ATLAS AIR WORLDWIDE HOLDINGS,                           :    **SECURITIES EXCHANGE ACT OF**
INC., CHARLES F. BOLDEN, JR., WALTER                    :    **1934**
G. BORST, RAYMOND L. CONNER, JOHN                       :
W. DIETRICH, BEVERLY K. GOULET,                         :    **JURY TRIAL DEMANDED**
BOBBY J. GRIFFIN, DUNCAN J.                             :
MCNABB, SHEILA A. STAMPS, CAROL J.                      :
ZIERHOFFER, and GEORGE A. WILLIS,                       :
                                                        :
                    Defendants.                         :
---------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Atlas Air Worldwide Holdings, Inc. ("Atlas Air" or the "Company") and the members Atlas Air's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Atlas Air by affiliates of an investor group led by funds managed by affiliates of Apollo Management Holdings, L.P. ("Apollo"), J.F. Lehman & Company, LLC, and Hill City Capital, LP ("the Consortium").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on October 7, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Rand Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Rand Parent, LLC ("Parent"), will merge with and into Atlas Air with Atlas Air surviving as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 4, 2022 (the "Merger Agreement"), each Atlas Air stockholder will receive $102.50 in cash (the "Merger Consideration") for each Atlas Air share owned. Parent and Merger Sub are affiliates of Apollo.

3.      As discussed below, Defendants have asked Atlas Air's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Atlas Air's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Atlas Air stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Charles F. Bolden, Jr. has served as a member of the Board since 2017.

11.     Individual Defendant Walter G. Borst has served as a member of the Board since 2022.

12.     Individual Defendant Raymond L. Conner has served as a member of the Board since 2022.

13.     Individual Defendant John W. Dietrich has served as a member of the Board since 2020 and is the Company's President and Chief Executive Officer.

14.     Individual Defendant Beverly K. Goulet has served as a member of the Board since 2021.

15.      Individual Defendant Bobby J. Griffin has served as a member of the Board since 2016.

16.     Individual Defendant Duncan J. McNabb has served as a member of the Board since 2012 and is the Chairman of the Board.

17.     Individual Defendant Sheila A. Stamps has served as a member of the Board since 2018.

18.     Individual Defendant George A. Willis has served as a member of the Board since 2022.

19.     Individual Defendant Carol J. Zierhoffer has served as a member of the Board since 2021.

20.     Defendant Atlas Air is a Delaware corporation and maintains its principal offices at 2000 Westchester Avenue, Purchase, New York 10577. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "AAWW."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

23.     Atlas Air, through its subsidiaries, provides outsourced aircraft and aviation operating services. It operates through two segments, Airline Operations and Dry Leasing. The Company offers outsourced cargo and passenger aircraft operating solutions, including contractual service arrangements, such as the provision of aircraft; and value-added services, including crew, maintenance, and insurance to aircraft and other customers. It also provides cargo and passenger aircraft charter services to the U.S. Military Air Mobility Command, charter brokers, freight forwarders, direct shippers, airlines, manufacturers, sports teams and fans, and private charter customers; and cargo and passenger aircraft and engines dry leasing services. In addition, the Company offers administrative and management support services, and flight simulator training services. It also serves express delivery providers, e-commerce retailers, and airlines. The Company has operations in Africa, Asia, Australia, Europe, the Middle East, North America, and South America. Atlas Air Worldwide was founded in 1992 and is headquartered in Purchase, New York.

24.     On August 4, 2022, the Company announced the Proposed Transaction:

PURCHASE, N.Y., August 4, 2022 – Atlas Air Worldwide (Nasdaq: AAWW) ("Atlas" or the "Company"), a leading global provider of outsourced aircraft and aviation operating services, today announced that it has entered into a definitive agreement to be acquired by an investor group ("the Consortium") led by funds managed by affiliates of Apollo (NYSE: APO) together with investment affiliates of J.F. Lehman & Company and Hill City Capital in an all-cash transaction with an enterprise valuation of approximately $5.2 billion.

Under the terms of the agreement, Atlas Air Worldwide shareholders will receive $102.50 per share in cash, representing a 57% premium to the 30-day volume-weighted average trading price per share of Atlas Air Worldwide common stock as of July 29, 2022[1]. Upon completion of the transaction, Atlas Air Worldwide

will become a privately held company and shares of Atlas Air Worldwide common stock will no longer be listed on the Nasdaq stock exchange. Atlas Air Worldwide will continue operating under the Atlas Air Worldwide name, be led by John Dietrich and the current executive team and maintain its global presence.

"We believe this transaction will deliver immediate and certain value to Atlas Air Worldwide shareholders at a substantial premium, and we are pleased to reach this agreement with the Consortium," said Duncan McNabb, Chairman of the Atlas Air Worldwide Board of Directors. "The Board's decision to unanimously approve this transaction follows a careful evaluation and thoughtful review of value creation opportunities for shareholders. We believe this transaction is the right next step to maximize value for our shareholders and the best path forward to accelerate the Company's ability to execute its strategic plan and achieve its long-term growth objectives."

"Over our 30-year history, Atlas Air Worldwide has grown to become a global leader in airfreight, delivering high-quality services to our diverse roster of customers around the world," said John Dietrich, President and Chief Executive Officer of Atlas Air Worldwide. "Following the closing of the sale to the Consortium, we will seek to leverage their resources, relationships and industry expertise to build on our strong financial and operational performance. Their investment in our company demonstrates their confidence in our people and our culture as we serve the growing needs of the global supply chain."

"Atlas Air Worldwide is a market leader that continues to set higher standards for excellence within the airfreight industry," said Apollo Partners Antoine Munfakh and Jason Scheir and J.F. Lehman & Company Partner Alex Harman on behalf of the Consortium. "With the strong market demand and long-term secular tailwinds for global air cargo services, Atlas is poised to capitalize on many opportunities for continued growth as a fund portfolio company of Apollo, J.F. Lehman and Hill City. We look forward to leveraging our resources, capital and experience in the sector to support the talented Atlas team, alongside our partners in this exciting next phase."

[1]July 29, 2022 represents the last full trading day prior to market speculation regarding a potential sale of the Company.

**Approvals and Timing**

The transaction is expected to close in the fourth quarter 2022 or first quarter 2023, subject to customary closing conditions, including approval by Atlas Air Worldwide shareholders and receipt of regulatory approvals.

\* \* \*

**Advisors**

Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Atlas Air Worldwide. Cravath, Swaine & Moore LLP is serving as Atlas Air Worldwide's legal advisor.

Evercore is acting as lead financial advisor to the Consortium. Barclays, Goldman Sachs, and Mizuho Bank are serving as financial advisors to the Consortium, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as legal advisor to Apollo and the Consortium entity, and Jones Day is providing legal advice to J.F. Lehman & Company and Hill City Capital.

**Financing**

Committed financing in support of the transaction was provided by Goldman Sachs, Barclays, Apollo Capital Management, Mizuho, and Credit Agricole.

\* \* \*

25.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Atlas Air's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

26.     On October 7, 2022, Atlas Air filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Proxy Statement fails to provide material information concerning financial projections by Atlas Air management and relied upon by Morgan Stanley in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Morgan Stanley with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Atlas Air management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDAR Adjusted Net Income, and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics

or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for Atlas Air; (ii) the inputs and assumptions underlying the use of LTM Exit AAV/EBITDAR multiples ranging from 4.25x to 5.25x; (iii) the inputs and assumptions underlying the use of the discount rates of 6.3% to 7.3%; and (iv) the number of fully diluted outstanding shares of Atlas Air.

33.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of AAV to NTM EBITDAR multiples ranging from 3.5x to 4.5x; and (ii) the inputs and assumptions underlying the use of the discount rate of 9.3%.

34.     With respect to Morgan Stanley's *Publicly Traded Comparable Companies Analysis*, the Proxy Statement fails to disclose the financial metrics of each company selected by Morgan Stanley for the analysis.

35.     With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose the research analysts reviewed and the price targets published by each analyst.

36.     With respect to Morgan Stanley's *Illustrative Leveraged Buyout Analysis*, the Proxy Statement fails to disclose the inputs and assumptions underlying: (i) a target range of annualized internal rates of return for the financial sponsor of 12.5% to 17.5%; (ii) a 50% debt-to-capitalization ratio; and (iii) a range from 4.25x to 5.25x of AAV/LTM EBITDAR exit multiples.

37.     With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for the transactions selected and reviewed by Morgan Stanley in the analysis.

38.     With respect to Morgan Stanley's services to the Company in connection to the Proposed Transaction, the Proxy Statement fails to disclose the amount of fee payable to Morgan Stanley that is contingent upon the closing of the Proposed Transaction.

39.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial

projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Atlas Air within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Atlas Air, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Atlas Air, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Atlas Air, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: October 7, 2022                                        **MELWANI & CHAN LLP**

By:   */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*